1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL ROBERT COFFIN,

11            Petitioner,                    No. 2:10-cv-0026 JAM EFB P

12        vs.

13   MATTHEW CATE,

14            Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner with counsel seeking a writ of habeas corpus pursuant to 28

17   U.S.C. § 2254.  Petitioner challenges his sentence on a 2005 judgment of conviction entered

18   against him in the Tehama County Superior Court on charges of voluntary manslaughter with a

19   sentence enhancement for personal use of a firearm.  He seeks relief on the grounds that the trial

20   court violated his rights under the Sixth and Fourteenth Amendments to the United States

21   Constitution when it imposed the upper term sentence on the firearm enhancement (*Cunningham*

22   claim).  Upon careful consideration of the record and the applicable law, the undersigned

23   recommends that petitioner's application for habeas corpus relief be denied.

24   ////

25   ////

26   ////

1

I.    **Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary of petitioner's crime of conviction.

> The victim, Keith Price, and his wife, Dana, lived in rural Tehama County with their two young children, Dy and Da.[1]  Defendant, who is Dana's cousin, was the Prices' neighbor.  Dana's father, Pete, and defendant's mother, Marilyn, lived together in a trailer about 200 yards away on defendant's property.
>
> The relationship between Keith and Dana was a troubled one, marked by excessive drinking and constant fighting, often involving physical altercations.  By all accounts, Keith became combative and abusive when he drank, and he physically and verbally abused Dana, often in front of the kids, whom he verbally abused as well.
>
> On one occasion, Keith assaulted Dana's father, Pete, and on another occasion, Keith physically assaulted defendant by hitting him in the back of the head and knocking defendant to the ground.  While carrying two lit flares, he threatened to burn defendant out of his property.  Keith also threatened to kill defendant and, at least once, faked his own suicide.
>
> Dana often sought refuge in her relationship with defendant.  There were many occasions when defendant intervened in fights between Keith and Dana.  For approximately a year and a half prior to the incident, defendant and Dana had a secret affair.
>
> On the day of the killing, Keith came home early because he had been laid off from his job.  He and Dana spent the evening at a school function.  Later that night, at about 11:30 p.m., Dana called defendant and asked him to meet her at the property line to talk.  Dana said that she and Keith had been fighting all night and that Keith was drunk and was calling her names and yelling at her.  Keith had gone into town, but was repeatedly calling Dana's cell phone and leaving messages.  Telling Dana, "[I]f you need me[,] call me or come over," defendant went back home.
>
> At approximately 3:00 a.m., defendant was awakened by Dana and the kids, who had come in the front door and were walking down the hallway towards the bedroom.  Defendant put the kids in his bed, picked his gun up off the bedroom floor, and went into the

---

[1]  Because many of the individuals involved have the same last names, we will refer to them by their first names for simplicity and to avoid confusion.

living room.  He sat down on the couch with Dana.  She told him she had packed her bag and was leaving Keith.

Their conversation was interrupted by someone banging on the side door of the house.  Knowing Keith owned a gun, and thinking he might have brought it with him, defendant told Dana to stay where she was, picked up his gun and a flashlight, and went to the door. He pushed open the door with his foot to find Keith standing at the bottom of a ramp extending from the doorway of the house (about three feet above the ground) to the ground below (about six feet out from the house).  The only light was defendant's flashlight, which he kept pointed down at the ramp so as not to intimidate Keith.

Keith had a lit cigarette in his right hand, but defendant could not see if he had anything in his left hand.  Keith was drunk and was asking to talk to his wife.  Defendant told him several times to "please just go home" and sleep it off.  However, Keith became angry.  According to defendant, when Keith saw defendant had a gun in his hand, Keith said, "What[,] are you gonna fucking shoot me?"

Defendant described what occurred next.  Keith lunged at him from the base of the ramp.  Thinking Keith had a piece of firewood in his hand and was going to try to kill him, defendant pulled the trigger and kept pulling it "until [Keith] turned."  Keith ran about 20 feet and then fell.

Immediately following the shooting, Dana ran out and told defendant to call 9-1-1.  She then started CPR on Keith.

An investigation of the scene soon after the shooting revealed there was no weapon on or around Keith, and no evidence that Keith had picked up a log or piece of firewood, as defendant claimed.  Seven shell casings were found in the vicinity of the shooting.  A toxicology report showed that Keith's blood alcohol content was .23 percent.

Although defendant contacted 9-1-1 and cooperated with law enforcement when officers arrived on the scene, both he and Dana did not reveal their 18-month love affair to officers during the initial investigation.

Defendant told investigators he had some prior training in the use of automatic handguns at the sheriff's reserve academy in Contra Costa County.  He was taught the "double path" method (i.e., shoot twice to the chest and if that does not work, then shoot to the head).  He also was taught to use lethal force only as a last option.

The autopsy conducted by the People's expert, Dr. Josselson, revealed that Keith had been shot five times (twice in the back

1   after he turned to run). The defense expert, Dr. Posey, reviewed
2   the autopsy report and disagreed with Dr. Josselson, concluding
    that, at best, Keith received a wound to the back of his left calf
3   when he twisted around after being hit by the first shots.

4   Resp't's Lodg. Doc. 2, at 2-5.

5       In an information filed on January 28, 2005, petitioner was charged with the murder of

6   Keith Price, in violation of Cal. Penal Code § 187(a). Clerk's Transcript on Appeal (CT) at 2.

7   The information also alleged that petitioner: (1) personally and intentionally discharged a

8   firearm, which caused great bodily injury and death, within the meaning of Cal. Penal Code

9   §§ 12022.53(c); (2) personally and intentionally discharged a handgun, within the meaning of

10  Cal. Penal Code § 12022.53(d); and (3) personally used a handgun, within the meaning of Cal.

11  Penal Code § 12022.5(a)(1). *Id.* at 2-3. On October 13, 2005, petitioner pled no contest to

12  voluntary manslaughter (Cal. Penal Code § 192), and admitted personally using a firearm to

13  commit the offense (Cal. Penal Code § 12022.5(a)). Reporter's Transcript on Appeal (RT) at

14  132-37. As part of his plea agreement, petitioner waived his right to a jury trial. CT at 20. He

15  also acknowledged that the trial court would conduct a "full evidentiary sentencing hearing"

16  before determining his sentence, up to a maximum of 21 years in state prison. *Id.*

17      Petitioner's sentencing proceedings were conducted over a two day period, from

18  November 29-30, 2005. RT at 145, *et seq.* At the sentencing hearing, petitioner testified that he

19  had "taken police academy training" in 1990 and had thereby qualified to become a reserve

20  police officer. *Id.* at 414-15. In addition, he took a certification course on semi-automatic

21  handguns, which was the same type of weapon with which he shot Price. *Id.* at 419-20. That

22  course included training on the "use of force." *Id.* at 420. Specifically, petitioner was trained

23  that "if it comes down to threats coming at you you shoot twice to the body and if that doesn't

24  work you shoot to the head." *Id.* He was also taught that "lethal force is the last option." *Id.* at

25  421. He was taught how to "de-escalate the situation" so he did not have to resort to lethal force.

26  *Id.*

4

1    With regard to the shooting of Keith Price, petitioner testified that he expected Price to be

2    armed with a "12 gauge when I opened that door." *Id.* at 449, 453.  He admitted that he had

3    "pulled the trigger three or four times" and that he thought he fired "three to four times."  *Id.* at

4    455, 456.  A forensic pathologist confirmed that the victim suffered five gunshot wounds.  *Id.* at

5    239.[2]

6    After considering mitigating and aggravating circumstances, relevant caselaw, and the

7    arguments of the parties, the trial court sentenced petitioner to the middle term of six years for

8    voluntary manslaughter, plus the upper term of ten years for the use of a firearm, for a total of

9    sixteen years in state prison.  *Id.* at 533-35.  With regard to the sentence on the firearm

10   enhancement, the sentencing judge made the following remarks:

11          Now, I have thought again carefully on that particular subject.
            And there is a case that has been cited by the People that I think
12          does have applicability to this case, and that is *People v. Brown*
            wherein the Court imposed an aggravated term for that violation
13          based upon the repeated use of that firearm and the fact that the
            defendant was a peace officer or had peace officer training in this
14          particular case and used the deadly force to solve what the Court
            characterized a [sic] personal problem.

15
            I believe that the defendant's reliance upon his prior training is ill-
16          placed, because prior peace officer training plus the training that is
            required for obtaining a permit to carry a concealed weapon clearly
17          defines, emphasizes the restricted use of deadly force.  And in this
            particular case, I am struck by the fact that the defendant by his
18          own words stated that he thought that the victim would be armed
            with a shotgun, almost, in effect, setting up some type of a violent
19          confrontation where the use of deadly force would be required
            rather than diffuse the matter, which there was clearly in my view
20          an opportunity to do so.  The defendant did in fact discharge that

21   _____

22          [2] At a later hearing in the Tehama County Superior Court on petitioner's application for
     habeas corpus relief, the Superior Court judge noted that:

23          the Defendant admitted in the probation report he received police
            training, and he shot four to seven times.  Also on the 911 call
24          there was an admission that he shot four or five times.  And at the
            sentencing hearing I believe his own testimony was he shot – fired
25          a gun numerous times and had police and firearm training.

26   Dckt. No. 1-1 at 225.

5

weapon multiply inflicting damage to the victim that he did.
Whether or not there were four or five shots or [six] or seven shots
fired, there certainly were multiple shots.  How many shells
actually hit the defendant i[s] certainly opened to some
speculation, but certainly multiple no matter how it's described,
and the violence of that particular action with a man that did not by
the evidence that comes before me have a deadly weapon, had at
most a piece of wood.  The defendant is able bodied, certainly
capable, I would hope, to handle a drunk under any circumstance
without the use of the deadly force that was used.

So, based upon that analysis, I am imposing the aggravated term of
10 years for the enhancement for a total term of 16 years.

*Id.* at 534-35.

Petitioner filed an appeal of his judgment of conviction in the California Court of Appeal and a petition for review in the California Supreme Court, both of which were denied.  Resp't's Lodg. Docs. 2, 4.

On January 22, 2007, after petitioner's appeal became final, the United States Supreme Court issued its decision in *Cunningham v. California*, 549 U.S. 270 (2007), holding that California's determinate sentencing law violated a defendant's right to a jury trial to the extent it permitted a trial court to impose an upper term based on facts found by the court rather than by a jury.  Petitioner subsequently raised a challenge to his sentence based on the *Cunningham* decision in a petition for a writ of habeas corpus filed in the Tehama County Superior Court.  Resp't's Lodg. Doc. 5.  The Superior Court held a hearing on the petition on April 28, 2008.  Dckt. No. 3-1, at 218-29.

Petitioner's counsel argued at that hearing that the sentencing judge violated the holding in *Cunningham* when he found that petitioner's firing of multiple shots and his police training constituted an aggravating circumstance, instead of allowing the jury to make that finding.  *Id.* at 221.  The prosecutor, on the other hand, argued that the sentencing court did not violate *Cunningham* because the judge based petitioner's upper term sentence on admissions made by petitioner. *Id.* at 224.  Petitioner's counsel countered that petitioner's statements at the sentencing hearing "are not, as far as I'm concerned, admissions for Sixth Amendment purposes

and *Cunningham* purposes." *Id.* at 225. The Superior Court denied the habeas petition, finding that "the Defendant made admissions [that he fired multiple shots] on three separate occasions, and the Court was justified in using those admissions to aggravate the sentence on the enhancement." *Id.* at 228. Specifically, the Superior Court found that "the Defendant's admission on the 911 call, statements to Probation and the statements at the sentencing hearing, justify the Court in imposing the aggravated term of ten years for the enhancement." *Id.* at 227.

Petitioner subsequently raised his *Cunningham* claim in petitions for a writ of habeas corpus filed in the California Court of Appeal and California Supreme Court. Resp't's Lodg. Docs. 7, 9. Those petitions were summarily denied. Resp't's Lodg. Docs. 8, 10. Accordingly, the Superior Court's decision is the operative decision for purposes of this court's review under AEDPA of petitioner's *Cunningham* claim. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**II.    Analysis**

  **A.  Standards for a Writ of Habeas Corpus**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

////

7

1           (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
2           determined by the Supreme Court of the United States; or

3           (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
4           State court proceeding.

5       For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

6 holdings of the United States Supreme Court at the time of the state court decision. *Stanley v.*

7 *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

8 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is

9 clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d

10 at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

11       A state court decision is "contrary to" clearly established federal law if it applies a rule

12 contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

13 precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

14 Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

15 the writ if the state court identifies the correct governing legal principle from the Supreme

16 Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]

17 *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

18 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

19 simply because that court concludes in its independent judgment that the relevant state-court

20 decision applied clearly established federal law erroneously or incorrectly. Rather, that

21 application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v.*

22 *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

23 habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

24

25     [3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
26 384 F.3d 628, 638 (9th Cir. 2004)).

1    the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

2    precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

3    of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

4    (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

5    condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

6    state court's ruling on the claim being presented in federal court was so lacking in justification

7    that there was an error well understood and comprehended in existing law beyond any possibility

8    for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

9          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

10   court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

11   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

12   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

13   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

14   considering de novo the constitutional issues raised.").

15         The court looks to the last reasoned state court decision as the basis for the state court

16   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

17   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

18   previous state court decision, this court may consider both decisions to ascertain the reasoning of

19   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

20   a federal claim has been presented to a state court and the state court has denied relief, it may be

21   presumed that the state court adjudicated the claim on the merits in the absence of any indication

22   or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

23   presumption may be overcome by a showing "there is reason to think some other explanation for

24   the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

25   803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

26   but does not expressly address a federal claim, a federal habeas court must presume, subject to

9

1  rebuttal, that the federal claim was adjudicated on the merits.  *Johnson v. Williams*, ___, U.S.

2  ___, ___, 133 S.Ct. 1088, 1091 (2013).

3          Where the state court reaches a decision on the merits but provides no reasoning to

4  support its conclusion, a federal habeas court independently reviews the record to determine

5  whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

6  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

7  review of the constitutional issue, but rather, the only method by which we can determine

8  whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.

9  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

10 there was no reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

11         When it is clear, however, that a state court has not reached the merits of a petitioner's

12 claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

13 habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

14 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

15     **B.  Petitioner's Claim**

16         Although petitioner's habeas petition includes six separate claims, he explains in the

17 traverse that he seeks relief only as to claim Four:  that his upper term sentence for a violation of

18 Cal. Penal Code § 12022.5(a), the firearm sentence enhancement, was imposed in violation of

19 the Sixth and Fourteenth Amendments because it was based on facts that were not found by a

20 jury beyond a reasonable doubt.  Dckt. No. 50, at 2 n.1.  Petitioner requests that the court remand

21 the matter to the Tehama County Superior Court for new sentencing proceedings on the firearm

22 use enhancement.  *Id.* at 1-2.

23     **1.  Background**

24         California Penal Code § 12022.5(a)(1), the sentence enhancement to which petitioner

25 pled guilty, provides:

26 ////

> Except as provided in subdivision (b), any person who personally
> uses a firearm in the commission of a felony or attempted felony
> shall be punished by an additional and consecutive term of
> imprisonment in the state prison for 3, 4, or 10 years, unless use of
> a firearm is an element of that offense.

At the time petitioner was sentenced in 2005, Cal. Penal Code § 1170.1(d) provided that if a

sentence enhancement was punishable by any one of three terms, the court should impose "the

middle term unless there are circumstances in aggravation or mitigation, and state the reasons for

its sentence choice, other then the middle term, on the record at the time of sentencing."  This

sentencing scheme was implemented through Rule 4.428(b) of the California Rules of Court,

which provided, in pertinent part, that:

> When the defendant is subject to an enhancement that was charged
> and found true for which three possible terms are specified by
> statute, the middle term must be imposed unless there are
> circumstances in aggravation or mitigation . . .
>
> The upper term may be imposed for an enhancement based on any
> of the circumstances in aggravation enumerated in these rules or,
> under rule 4.408, any other reasonable circumstances in
> aggravation that are present . . .

Rule 4.421 contained a list of specific aggravating factors that could support an upper

term sentence.[4]  That list did not contain training in the use of firearms or the firing of multiple

shots.  However, Rule 4.408 provided that "The enumeration in these rules of some criteria for

the making of discretionary sentencing decisions does not prohibit the application of additional

criteria reasonably related to the decision being made.  Any such additional criteria shall be

stated on the record by the sentencing judge."  Therefore, a sentencing judge could impose the

upper term based on factors not listed in Rule 4.421, so long as those factors were relevant and

reasonable and were stated on the record.  As explained by the California Supreme Court, "[t]he

trial court is not limited to the aggravating circumstances listed in the rules."  *People v. Black*, 41

Cal.4th 799, 817 (2007).

---

[4] An aggravating circumstance is "a fact that makes the offense 'distinctly worse than the ordinary.'" *People v. Moreno*, 128 Cal.App.3d 103, 110 (1982).

1    Rule 4.420(b) provided that circumstances in aggravation and mitigation "must be

2 established by a preponderance of the evidence."  Selection of the upper term was justified "only

3 if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the

4 circumstances in mitigation."  *Id.*  Those relevant facts included "the case record, the probation

5 officer's report, other reports and statements properly received, statements in aggravation or

6 mitigation, and any further evidence introduced at the sentencing hearing."  *Id.*  However, "a fact

7 that is an element of the crime upon which punishment is being imposed" could not be used to

8 impose a greater term.  California Rules of Court, Rule 4.420(d).

9    **2.  Applicable Legal Standards**

10    A criminal defendant is entitled to a trial by jury and to have every element necessary to

11 sustain his conviction proven by the state beyond a reasonable doubt.  U. S. CONST. Amends. V,

12 VI, XIV.  To that end, in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States

13 Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact

14 other than a prior conviction that "increases the penalty for a crime beyond the prescribed

15 statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt."  In

16 *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), the United States Supreme Court decided

17 that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt

18 any fact that increases the statutory maximum sentence, unless the fact was "admitted by the

19 defendant" or was based on a prior conviction.  In *Blakely*, the Supreme Court also clarified the

20 definition of "statutory maximum" for purposes of this constitutional rule: "the relevant

21 'statutory maximum' is not the maximum sentence a judge may impose after finding additional

22 facts, but the maximum he may impose *without* any additional findings."  *Id.*  In *United States v.*

23 *Booker*, 543 U.S. 220 (2005), the United States Supreme Court applied *Blakely* to the Federal

24 Sentencing Guidelines.  The court in *Booker* again clarified that "'the statutory maximum' for

25 *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts

26 reflected in the jury verdict or admitted by the defendant."  *Id.* at 232.

1    Subsequent to the decision in *Blakely*, the California Supreme Court decided *People v.*

2  *Black*, 35 Cal.4th 1238 (2005).  In *Black,* the court rejected the *Apprendi/Blakely* Sixth

3  Amendment challenge to California's Determinate Sentencing Law (DSL) posed in that case.

4  The California Supreme Court held that the discretion afforded to a sentencing judge in choosing

5  a lower, middle or upper term in a DSL case rendered the upper term under California law the

6  "statutory maximum" within the contemplation of *Apprendi* and *Blakely*.  35 Cal.4th at 1257-61,

7  *cert. granted and judgment vacated*, 549 U.S. 1190 (2007).  Subsequently, the United States

8  Supreme Court decided *Cunningham v. California*, 549 U.S. 270 (2007).  Citing the decisions in

9  *Apprendi* and *Blakely*, the Supreme Court in *Cunningham* held that California's DSL violated a

10  defendant's right to a jury trial to the extent it permitted a trial court to impose an upper term

11  based on facts found by the court rather than by a jury.  The Supreme Court also determined that

12  the middle term under the DSL is the maximum term that may be imposed on the basis of the

13  jury's verdict alone.  *Id.* at 288.  The Ninth Circuit has subsequently held that the decision in

14  *Cunningham* may be applied retroactively on collateral review.  *Butler v. Curry*, 528 F.3d 624,

15  639 (9th Cir. 2008).[5]

16  ////

17  ////

18

19    [5]  The California Legislature amended the DSL by urgency legislation in response to the *Cunningham* decision.  *People v. Sandoval*, 41 Cal.4th 825, 836 n.2 (2007).  Those amendments,

20  which became effective March 30, 2007, adopted "*Cunningham*'s suggestion that California could comply with the federal jury-trial constitutional guarantee while still retaining determinate sentencing, by allowing trial judges broad discretion in selecting a term within a statutory range,

21  thereby eliminating the requirement of a judge-found factual finding to impose an upper term." *People v. Wilson*, 164 Cal. App.4th 988, 992 (2008).  The amendments to California's DSL

22  allow the trial court broad discretion under California Penal Code § 1170(b) to select among the lower, middle, and upper terms specified by the statute without stating the ultimate facts deemed

23  to be aggravating or mitigating and without weighing the aggravated and mitigating factors. *Sandoval*, 41 Cal.4th at 847.  As amended, section 1170 now provides in pertinent part: "When a

24  judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court . . . .  The court

25  shall select the term which, in the court's discretion, best serves the interests of justice.  The court shall set forth on the record the reasons for imposing the term selected . . . ."  California

26  Penal Code § 1170, subd. (b).)

### 3. Analysis

Here, the sentencing court relied on an admitted fact to impose an upper term sentence. However, as noted above, an exception to the *Apprendi* rule exists for facts that are admitted by the defendant. *Blakely*, 542 U.S. at 303. In this case, the sentencing court based its upper term sentence on the facts that petitioner fired his weapon multiple times and had prior police training on the appropriate uses of lethal force. Petitioner concedes that he admitted firing the gun multiple times and that he received police training in the use of firearms. Dckt. No. 50 at 3. However, he argues that his testimony at the sentencing hearing did not constitute an admission for purposes of the *Apprendi* exception for "facts admitted by the defendant" because he did not also specifically admit "that his police training and the number of bullets fired were an aggravating circumstance." *Id.* at 9. Petitioner points out that police training and firing multiple gunshots are not listed in the California Rules of Court as aggravating circumstances. *Id.* He concedes that California Rule of Court 4.408 allows the sentencing judge to impose an upper term sentence for "any other reasonable circumstances in aggravation." *Id.* However, he asserts that he "never made an admission that the fact of his weapons training and/or the fact that he fired multiple times was a 'reasonable circumstance in aggravation.'" *Id.*

Petitioner informs the court that he admitted these facts solely for the purpose of explaining that he was trying to protect himself and others when he fired the shots at Price. *Id.* He contends that the sentencing judge improperly took the "bare facts" admitted by petitioner, which were intended to provide mitigating circumstances, and construed them as aggravating circumstances instead. *Id.* Petitioner argues that firing multiple shots, by itself, is not an aggravating circumstance. Rather, the sentencing court had to take into consideration all of the circumstances of the shooting in order to make the admitted "fact" into the aggravating circumstance. He contends that the sentencing judge made a finding that, "taking into account all that Mr. Coffin knew about the use of weapons, combined with the circumstances Mr. Coffin was aware of when he confronted Mr. Price, Mr. Coffin used greater force than necessary

14

1  because he fired his gun more than once." *Id.* at 8.  Petitioner argues, "because the judge, not a

2  jury, made this finding, and because the judge used the preponderance of the evidence, rather

3  than the proof beyond a reasonable doubt, standard, [petitioner's] rights as set forth in *Apprendi,*

4  *Blakely,* and *Cunningham* were clearly breached." *Id.* at 9.

5          As set forth above, in its decision on petitioner's habeas petition, the California Superior

6  Court concluded that petitioner's upper term sentence on the firearm enhancement did not

7  violate the *Cunningham* decision because petitioner admitted in several contexts that he fired

8  multiple shots, and the sentencing court "was justified in using those admissions to aggravate the

9  sentence on the enhancement." Dckt. No. 3-1 at 228.  That decision is not an objectively

10  unreasonable application of *Apprendi* and its progeny, nor is it based on an unreasonable

11  determination of the facts of this case.  Under the *Apprendi* line of cases, any *fact* that increases a

12  criminal sentence beyond the statutory maximum must be submitted to a jury and proved beyond

13  a reasonable doubt.  Petitioner fails to explain how the process of determining whether certain

14  admitted facts constitute an aggravating circumstance is itself a "fact" that must be submitted to

15  a jury under the *Apprendi* ruling.  Petitioner has not cited any case holding that a sentencing

16  court cannot rely on an admitted fact to impose an upper term sentence unless the defendant also

17  admits that the fact constitutes an aggravated circumstance under California law.  As explained

18  above, an exception to the *Apprendi* rule exists for facts that are admitted by the defendant.

19  *Blakely*, 542 U.S. at 303.  Here, petitioner admitted the facts that he fired multiple times and

20  received police training on the use of lethal weapons.  The sentencing court relied on those

21  admitted facts to impose the upper term sentence.  Petitioner's claim that these factual

22  admissions were insufficient to support an upper term sentence unless he also admitted that those

23  facts constituted an aggravating circumstance is unsupported by case law and should be denied.

24          Petitioner may be arguing that the sentencing judge violated his Sixth Amendment rights

25  because the judge necessarily relied on facts in addition to those admitted by petitioner in order

26  to find that the firing of multiple shots, or petitioner's police training, constituted a circumstance

1    in aggravation.  In other words, in imposing the upper term the judge may have relied on facts

2    that he found to be true but that were not admitted by petitioner.  However, a review of the

3    sentencing proceedings reflects that this was not the case.  When pronouncing sentence on the

4    firearm enhancement, the judge announced that he was relying on a state case which held that

5    "the repeated use of a firearm" and the defendant's "peace officer training" justified the

6    imposition of an upper term sentence.  The judge then went on to explain why those factors were

7    important in this case.  He cited: (1) petitioner's "repeated use" of the firearm; (2) the fact that

8    petitioner had received training in the use of deadly force; (3) the fact that police training

9    "emphasizes the restricted use of deadly force," (3) petitioner's statement that he thought the

10   victim would be armed with a shotgun; (4) the fact that the victim was not in possession of a

11   deadly weapon but "had at most a piece of wood;" and (5) the fact that petitioner was "able

12   bodied" and therefore capable "to handle a drunk under any circumstance without the use of

13   deadly force."  RT at 534-35.  At the sentencing hearing, petitioner admitted that he repeatedly

14   shot the victim, that he had received police training in the use of deadly force, that the police

15   training emphasized the restricted use of deadly force, that he expected the victim to be armed

16   with a shotgun, and that he thought the victim had a piece of wood in his hand.  The only

17   possible "fact" not admitted by petitioner but mentioned by the sentencing judge was that

18   petitioner was "able bodied."  To the extent the sentencing judge improperly found that

19   petitioner was "able bodied" and relied on that fact in imposing the upper term sentence, this

20   court concludes that any error was harmless.  It is clear from the record of the sentencing

21   proceedings that the judge imposed the upper term sentence based on the facts that petitioner

22   fired multiple shots and had received police training on the use of force, and not because he was

23   able bodied.  In short, petitioner's upper term sentence does not violate the holdings in *Apprendi*

24   and its progeny because the facts the sentencing judge used in imposing the upper term (that

25   petitioner fired multiple shots and received police training in the use of weapons) were admitted

26   ////

1   by petitioner.  *See e.g.*, *United States v. De Leon*, 444 F.3d 41, 54-55 (1st Cir. 2006) (finding no

2   *Blakely* error when the sentencing judge relied on facts stipulated to at trial).

3           The court also notes that petitioner's upper term sentence on the enhancement is not

4   unconstitutional if at least one of the aggravating factors the sentencing judge relied upon to

5   impose the upper term was established in a manner consistent with the Sixth Amendment.  *See*

6   *Butler*, 528 F.3d at 643 ("If at least one of the aggravating factors on which the judge relied in

7   sentencing [the defendant is] established in a manner consistent with the Sixth Amendment, [the

8   defendant's] sentence does not violate the Constitution.  Any additional factfinding [is] relevant

9   only to selection of a sentence within the statutory range.").  In its decision on petitioner's direct

10  appeal, the California Court of Appeal concluded that the fact petitioner fired multiple shots was

11  sufficient to constitute a circumstance in aggravation, supporting an upper term sentence.

12  *People v. Coffin*, No. C051446, 2006 WL 2329433, at *6 (Cal.App.3 Dist. Aug. 11, 2006).

13  Because the sentencing judge could have legally imposed the upper term on the sentence

14  enhancement solely on petitioner's admission that he fired more than one shot, his upper term

15  sentence is not unconstitutional even if the sentencing judge also considered other facts in

16  imposing that sentence.  Accordingly, petitioner's sentence does not violate *Apprendi* and its

17  progeny.  *Butler*, 528 F.3d at 643.

18  **III.  Conclusion**

19          For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

20  application for a writ of habeas corpus be denied.

21          These findings and recommendations are submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

26  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  July 1, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE